UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
------------------------------------------------- X
                                      :

BODUM U.S.A, Inc.,                    :

                    Plaintiff,     :

                                          :              **OPINION AND ORDER**

       - against -             :

                                          :               **11 Civ. 8702 (SAS)**

HANTOVER, Inc.,               :

                                          :

                    Defendant.   :
------------------------------------------------- X

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

         Bodum U.S.A. Inc. ("Bodum") brings this declaratory judgment action seeking determinations of non-infringement and invalidity respecting a patent owned by Hantover Inc. ("Hantover") for a universal knife holder. Hantover now moves to dismiss the Complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to transfer the case to the United States District Court for the Western District of Missouri.  For the following reasons, Hantover's motion to dismiss the Complaint is granted, without prejudice and with leave to replead.

## II.    BACKGROUND

The facts of the case are largely undisputed.  Bodum is a Delaware corporation with offices and its principal place of business in New York.[1]  Bodum is part of an international conglomeration of companies headquartered in Switzerland.[2]  Bodum creates and distributes kitchen products including a line of knife block products named "BISTRO Universal Knife Block."[3]  Hantover is a Missouri corporation with its headquarters and operating facilities located in Kansas City, Missouri.[4]  Hantover owns U.S. Patent No. 6,082,559 ("the '559 patent") which is directed to a universal knife block that Hantover commercializes under the brand name KAPOOSH.[5]

On April 18, 2011, counsel for Hantover sent a letter to Bodum's New York office regarding the '559 patent.[6]  The letter alleged Bodum's "BISTRO Universal Knife Block" infringed the '559 patent, and asked Bodum to cease and

---

[1]     *See* Complaint ("Compl.") ¶ 1.

[2]     *See* Bodum History, Ex. D to Declaration of Michael B. Hurd, counsel for Hantover, in Support of Defendant's Motion to Dismiss or Transfer ("Hurd Decl.").

[3]     *See* Compl. ¶¶ 6, 10.

[4]     *See* Declaration of Bernard G. Huff, President of Hantover in Support of Defendant's Motion to Dismiss or Transfer ("Huff Decl.") ¶ 2.

[5]     *See* Exhibit B to Compl.

[6]     *See id.*

desist infringing activities or seek a non-exclusive license under the patent.[7]  The letter warned that "Bodum's failure to comply with these demands will leave us no option but to advise Hantover to take whatever legal steps are necessary to enforce its valuable patent rights."[8]

On June 29, 2011, Bodum responded by providing Hantover with copies of four foreign patents that Bodum believed invalidated Hantover's patent and that had never been presented to the United States Patent and Trademark Office.[9]  On November 2, 2011, Hantover replied disputing Bodum's assertions of patent invalidity.[10]  Hantover warned that it was prepared to enforce its patent rights if Bodum continued to sell the "BISTRO Universal Knife Block" or failed to seek a license for the '559 patent by December 2, 2011.[11]

On November 30, 2011, Bodum filed a complaint in this Court seeking a declaratory judgment of noninfringement and invalidity of Hantover's

---

[7]     *See id.*

[8]     *Id.*

[9]     *See* Compl. ¶ 12.  *See also* 6/29/11 Letter from Bodum's counsel to Hantover's counsel, Ex. A to Hurd Decl.

[10]    *See* 11/2/11 Email from Hantover's counsel to Bodum's counsel, Ex. B to Hurd Decl.

[11]    *See id.*

'559 patent.  On January 20, 2012, Hantover filed this motion to dismiss under

Rule 12(b)(2) of the Federal Rules of Civil Procedure or, in the alternative, to

transfer the case to the Western District of Missouri pursuant to section 1404 of

Title 28 of the United States Code.

## III.   APPLICABLE LAW

### A.   Rule 12(b)(2) Motion to Dismiss

When the issue of personal jurisdiction "is decided initially on the

pleadings and without discovery, the plaintiff need only show a prima facie case."[12]

Plaintiffs "can make this showing through [their] own affidavits and supporting

materials containing an averment of the facts that, if credited . . . would suffice to

establish jurisdiction over the defendant."[13]  Thus, a court may consider materials

outside the pleadings,[14] but must credit plaintiffs' averments of jurisdictional facts

---

[12]     *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).  *Accord Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 724 (S.D.N.Y. 2010) ("As no discovery has yet taken place, to survive a motion to dismiss the plaintiff must plead factual allegations [that] constitute a prima facie showing of jurisdiction.") (quotation marks omitted).

[13]     *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quotation marks and citations omitted).

[14]     *See Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 452 (S.D.N.Y. 2000).

as true.[15]  "[A]ll allegations are construed in the light most favorable to the plaintiff

and doubts are resolved in the plaintiff's favor, notwithstanding a controverting

presentation by the moving party."[16]  Nonetheless, where a defendant "rebuts

[plaintiffs'] unsupported allegations with direct highly specific, testimonial

evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter

that evidence – the allegation may be deemed refuted."[17]  Although in patent cases

the court applies the uniform body of Federal Circuit law,[18] the court will apply the

relevant state long-arm statute when determining whether it has personal

jurisdiction over a defendant.[19]  Accordingly, New York law defines the

jurisdictional issue here.

---

[15]     *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*, 84 F.3d 560, 567 (2d Cir. 1996).

[16]     *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). *Accord Whitaker*, 261 F.3d at 208.

[17]     *Schenker v. Assicurazioni Generali S.p.A., Consol.*, No. 98 Civ. 9186, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002).

[18]     *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543-44 (Fed. Cir. 1995).  *Accord Patent Rights Protection Group, LLC v. Video Gaming Techs, Inc.*, 603 F.3d 1364, 1368 (Fed. Cir. 2010).

[19]     *See Graphic Controls Corp. v. Utal Med. Prods. Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998) ("[I]n interpreting the meaning of state long-arm statutes, we elect to defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach the limit of federal due process.") (citations omitted).

### 1.   General Jurisdiction Under Section 301 of the CPLR

Under section 301 of the New York Civil Practice Law and Rules ("CPLR"), New York subjects a foreign corporation to general jurisdiction if it is "doing business" in the State.  Under this test, "a foreign corporation is amenable to suit in New York if it is 'engaged in such a continuous course' of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction."[20] "[T]he term 'doing business' is used in reference to foreign corporations to relate to 'the ordinary business which the corporation was organized to do' . . . . It is not the occasional contact or simple collateral activity which is included."[21]  "The doing business standard is a stringent one because a corporation which is amenable to the [c]ourt's general jurisdiction 'may be sued in New York on cause of action wholly unrelated to acts done in New York.'"[22]

To determine whether a foreign corporation is doing business in New York, courts focus on criteria including: (1) whether the foreign corporation has an

---

[20]   *Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 191-92 (S.D.N.Y. 2000) (quoting *Frummer v. Hilton Hotels Int'l Inc.*, 281 N.Y.S.2d 41, 43 (1967)).

[21]   *Bryant v. Finnish Nat'l Airline*, 253 N.Y.S.2d 215, 219-20 (1st Dep't 1964) (citation omitted).

[22]   *Jacobs v. Felix Bloch Erben Verlag Fur Buhne Film Und Funk KG*, 160 F. Supp. 2d 722, 731 (S.D.N.Y. 2001) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 2001)).

office in the state; (2) whether it has any bank accounts or other property in the

state; (3) whether it has a phone listing in the state; (4) whether it does any public

relations work in the state; and (5) whether it has employees who permanently

work in the state.[23]  No single criterion is determinative.[24]  The general jurisdiction

inquiry thus looks to the totality of the defendant's contacts and "permits a court to

exercise its power in a case where the subject matter of the suit is unrelated to

those contacts."[25]

"[M]ere sales of a manufacturer's product in New York, however

substantial, have never made the foreign corporation manufacturer amenable to suit

in this jurisdiction."[26]  However, extensive sales can suggest a continuing course of

---

[23]     *See Wiwa v. Royal Dutch Petrol. Co.*, 226 F.3d 88, 98 (2d Cir. 2000).

[24]     *See Metropolitan Life Ins. Co.*, 84 F.3d at 570 ("Contacts with the forum
state should not be examined separately or in isolation.  There is no talismanic
significance to any one contact or set of contacts that a defendant may have with a
forum state; courts should assess the defendant's contacts as a whole.");  *Landoil
Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.
1990) ("The Court must therefore analyze a defendant's connections to the forum
state 'not for the sake of contact-counting, but rather for whether such contacts
show a continuous, permanent and substantial activity in New York.'") (quoting
Weinstein, Korn & Miller, New York Civil Practice ¶ 301.16, at 3-32).

[25]     *Metropolitan Life Ins. Co.*, 84 F.3d at 567-68 (citing *Helicopteros
Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

[26]     *UTC Fire & Sec. Americas Corp., Inc.* v. *NCS Power, Inc.*, No. 10 Civ.
6692, 2012 WL 423349, at *4 (S.D.N.Y. Feb. 10, 2012) (citing *Delagi v.
Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 433 (1976)).

solicitation of business in New York, which is also a relevant factor in the general jurisdiction inquiry. "Solicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services."[27] "[I]f the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist."[28] In order to meet the level of substantial and continuous solicitation, "direct sales into the New York market must constitute a significant portion of the defendant's business activities."[29] After a court finds solicitation that is substantial and continuous, it "can consider whether there are sufficient additional activities of substance to support the exercise of general jurisdiction."[30] "In evaluating the existence of other activities of substance, courts 'tend to focus on physical corporate presence,' . . . . However,

---

[27]     *Landoil Res. Corp.*, 918 F.2d at 1043 (citations omitted). *Accord UTC Fire & Sec. Americas Corp., Inc.*, 2012 WL 423349, at *3.

[28]     *Landoil Res. Corp.*, 918 F.2d at 1043-44 (citations omitted).

[29]     *UTC Fire & Sec. Americas Corp.*, 2012 WL 423349, at *3 (citations omitted).

[30]     *Nelson v. Massachusetts Gen. Hosp.*, No. 04 Civ. 5382, 2007 WL 2781241, at *17 (S.D.N.Y. Sept. 20, 2007) (citations omitted).

a permanent physical presence in the state is not an absolute precondition for 'doing business' in New York."[31]

### 2.  Specific Jurisdiction Under Section 302(a)(1) of the CPLR

Under section 302(a)(1) of the CPLR a court may exercise specific jurisdiction over a non-domiciliary, provided that two conditions are met: the non-domiciliary defendant transacts business within New York and the claim against the non-domiciliary defendant arises directly out of his activity.[32]  Section 302(a)(1) "is a single-act statute requiring but one transaction – albeit a purposeful transaction – to confer jurisdiction in New York."[33]

"New York courts define 'transact[ing] business' as purposeful activity – 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"[34]  There is no definitive test to determine if a

---

[31]  *Id.* at *14 (citations omitted).

[32]  *See Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

[33]  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).  *Accord Deutsche Bank Sec., Inc. v. Montana Bd. Invs.*, 7 N.Y.3d 65, 71 (2006) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (quotation marks omitted).

[34]  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)).

defendant has purposefully availed itself of the privilege of conducting activities in New York.  Rather, the totality of the defendant's contacts must be reviewed to determine whether jurisdiction is proper.[35]

### 3.    Due Process

As set forth by the Supreme Court in *International Shoe v. Washington*, due process requires that a defendant "not present within the territory of the forum" have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[36] This involves an analysis consisting of two components: the minimum contacts test and the reasonableness inquiry.

To establish the minimum contacts necessary to satisfy due process, the plaintiff must show that "his claim arises out of or relates to, the defendant's contacts with the forum . . . [that] the defendant purposefully availed itself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there."[37]  If defendant's contacts with the forum state rise to this minimum level, a defendant may defeat jurisdiction only by presenting "a

---

[35]     *See Cutco Indus.*, 806 F.2d at 368.

[36]     326 U.S. 310, 316 (1945).

[37]     *Bank Brussels Lambert v. Fiddler Gonzales & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2007) (internal quotation marks omitted).

compelling case that the presence of some other considerations would render jurisdiction unreasonable."[38]  Courts must weigh the following five factors in evaluating the "reasonableness" requirement of due process:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.[39]

## B.   Transfer of Venue

Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  This statute has superseded the common-law doctrine of forum non conveniens, which is now appropriate only in "'cases where the alternative forum is abroad.'"[40]

In order to transfer a civil action under Section 1404(a), the moving party must satisfy two requirements.  *First*, the transferee court must be able to

---

[38]    *Burger King Corp. v. Rudzewicz*, 471  U.S. 462, 477 (1985).

[39]    *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987).

[40]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994)).  *Accord Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

exercise jurisdiction over the parties and must be an appropriate venue for the action. *Second*, the balance of convenience and justice must favor transfer.[41] Although the first requirement is straightforward, the second requirement "'is essentially an equitable task' left to the Court's discretion."[42]

> Some of the factors a district court is to consider are, inter alia: (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease to access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.[43]

Additional factors a court may consider "include (1) the forum's familiarity with governing law and . . . (2) the interest of justice, based on the totality of the circumstances."[44]  When conducting this balancing test, the court enjoys "broad discretion" and decides the issue based on "notions of convenience and fairness on

---

[41]     *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).

[42]     *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)).

[43]     *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (quotations omitted).  *Accord Iragorri*, 274 F.3d at 73-74 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

[44]     *TouchTunes Music Corp. v. Rowe Intern. Corp.*, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009) (quotations omitted).

a case-by-case basis."[45]   The movant bears the burden of showing that transfer is warranted.[46]

Not all of these factors merit equal weight.  The convenience of witnesses is the most important factor in deciding whether to transfer an action.[47] The location of documents, on the other hand, is "not a compelling consideration when records are easily portable."[48]  For the purposes of determining the locus of operative facts, a court may make reasonable assumptions regarding the location of events if they are not clearly specified in the complaint.[49]

## IV.   DISCUSSION

### A.      Personal Jurisdiction

---

[45]      *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org.*, 487 U.S. at 29).

[46]      *See Iragorri*, 274 F.3d at 71 (citing *Gulf Oil*, 330 U.S. at 508).

[47]      *See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989).  *See also* James Wm. Moore et al., *Moore's Federal Practice* § 111.13[1][f][i] (3d ed. 2005).

[48]      *KPMG Consulting, Inc. v. LSQ II, LLC*, No. 01 Civ. 11422, 2002 WL 1543907, at *4 (S.D.N.Y. July 12 2002) (internal quotations omitted).  *Accord Coker v. Bank of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, the location of documents factor is neutral.") (internal quotations omitted).  This is even more true today, in the Internet age, than it was fifteen years ago.

[49]      *See Alonso v. Saudi Arabian Airlines Corp.*, No. 98 Civ. 7781, 1999 WL 244102, at *7 (S.D.N.Y. Apr. 23, 1999).

Bodum argues that both general and specific jurisdiction authorize the court's exercise of personal jurisdiction over Hantover.  I consider both possible bases in turn, concluding that Bodum has not made out a prima facie case of personal jurisdiction.

### 1.    General Jurisdiction Under Section 301

In its Complaint, Bodum fails to allege facts sufficient to support a finding of general jurisdiction over Hantover.  Bodum merely uses conclusory language that tracks the case law, and makes no specific factual allegations. Hantover has none of the usual contacts considered in the general jurisdiction inquiry: it owns no property in New York and has no offices, employees, bank accounts, post office boxes, telephone lines, or mailing addresses within the state.[50]

Nonetheless Bodum argues that Hantover's New York sales represent a systematic and continuous course of business that gives rise to general jurisdiction.  Under the "solicitation-plus" doctrine, direct sales must first rise to the level of "substantial solicitation."[51]  In the year the suit was filed, less than one

---

[50]    *See* Huff Decl. ¶ 5.  Also, Hantover is neither licensed to do business in New York nor does it pay any taxes in New York.  *See id.*

[51]    *Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 16 (E.D.N.Y. 2007) (citing *Overseas Media, Inc. v. Skvortsov*, 407 F. Sup. 2d 563, 569 (S.D.N.Y. 2006)).  Courts look at the percentage of a company's overall revenue generated in New York to determine whether solicitation is substantial. *See id.*

percent of Hantover's sales were in New York.[52]   District courts in this Circuit have repeatedly held that where a foreign corporation derives less than five percent of its revenue from New York, that amount is insubstantial and cannot support a finding of personal jurisdiction over the defendant.[53]   The Court cannot proceed to the second prong of the "solicitation plus" test, because these direct sales do not constitute a significant portion of Hantover's business activities.   The mere fact that Hantover sells its product in New York is not enough to justify an exercise of general jurisdiction, and Bodum makes no other factual allegations or arguments that would support a finding of general jurisdiction.[54]   Therefore, on the facts

---

[52]        *See* Huff Decl. ¶ 6.

[53]        *See, e.g.*, *Indemnity Ins. Co. of N. Am. v. K-Line Am., Inc.*, No. 06 Civ. 0615, 2007 WL 1732435, at *5 (S.D.N.Y. June 13, 2007) (2.2-2.7%);  *Zipper v. Nichtern*, No. 03 Civ. 5796, 2007 WL 1041667, at *5-6 (E.D.N.Y. Mar. 30, 2007) (1.92%);  *Yanouskiy v. Eldorado Logistics Systems, Inc.*, No. 05 Civ. 2202, 2006 WL 3050871, at *5-6 (E.D.N.Y. Oct. 20, 2006) (0.13%);  *Gross v. Bare Escentuals, Inc.*, No. 03 Civ. 3089, 2005 WL 823889, at *5 (S.D.N.Y. Apr. 8, 2005) (3-4%);  *Hutton v. Priddy's Auction Galleries, Inc.* 275 F. Supp. 2d 428, 437 (S.D.N.Y. 2003) (3%);  *Stemcor USA, Inc. v. Sharon Tube Co.*, No. 00 Civ. 9186, 2001 WL 492427, at *2 (S.D.N.Y. May 8, 2001) (1%).

[54]        For example, a court in this district granted jurisdiction over a foreign corporation which had $600,000 in New York sales, or 3.61% of its total sales. *See Purdue Pharma L.P. v. Impax Laboratories, Inc.*, No. 02 Civ. 2803, 2003 WL 22070549, at *2 (S.D.N.Y. Sep. 4, 2003).  In that case, the foreign corporation "solicited business in New York in a variety of ways. It made sales calls to its customers via telephone, e-mail and face-to-face communication.  [It] advertised its products in trade catalogs and journals that were distributed in New York.  [It] mailed product brochures to its New York customers.  In addition, [it] operated a website that solicited business nationally and internationally." *Id.*

currently pled, section 301 does not provide a basis for asserting personal
jurisdiction over Hantover.

### 2.     Specific Jurisdiction Under 302(a)(1)

Bodum argues specific jurisdiction also authorizes personal
jurisdiction over Hantover.  Bodum relies primarily on the two cease and desist
letters Hantover's counsel sent to Bodum's New York office in drawing this
conclusion.  Bodum does not make any other factual allegations regarding specific
jurisdiction.  However, the Federal Circuit has repeatedly held that "cease-and-
desist letters alone do not suffice to justify personal jurisdiction"[55] requiring
instead that "the defendant [must also] have engaged in 'other activities' that
related to the enforcement or the defense of the validity of the relevant patents."[56]
Bodum fails to specifically allege any of these 'other activities.'  Therefore,
Bodum has not met its burden of showing a prima facie case of specific jurisdiction
under section 302(a)(1).

### 3.     Due Process

---

[55]     *Red Wing Shoe Co. v. Hockerson-Halberstadt*, 148 F.3d 1355, 1361 (Fed.
Cir. 1998).  *Accord Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324,
1334 (Fed. Cir. 2008).

[56]     *Avocent*, 552 F.3d at 1334.  Examples of 'other activities' include "initiating
judicial or extra-judicial patent enforcement within the forum, or entering into an
exclusive license agreement or other undertaking which imposes enforcement
obligations with a party residing or regularly doing business in the forum." *Id.*

I do not reach the due process inquiry because personal jurisdiction is not authorized by statute.

## B.   Transfer

Because dismissal is appropriate in this case, I do not reach the issue of transfer.

## C.   Leave to Replead

Whether to permit a plaintiff to amend his complaint is a matter committed to a court's "sound discretion."[57]  Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[58]  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[59]  Leave to replead should be denied, however, where the proposed amendment would be futile.[60]  Here, Bodum could plead additional facts to make out a prima facie case of jurisdiction.  Accordingly, Bodum may have until May 8, 2012 to file an amended complaint.

---

[57]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[58]   Fed. R. Civ. P. 15(a).

[59]   *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[60]   *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

## V.    CONCLUSION

For the foregoing reasons, defendant's motion is granted.  The Clerk

of the Court is directed to close this motion [Docket # 7].


SO ORDERED

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              April 13, 2012

18

**-Appearances-**

**Counsel for Plaintiff:**

Rukhsanah L. Lighari, Esq.
Connell Foley LLP
888 Seventh Avenue, 9th Floor
New York, NY 10106
(212) 307-3700

Daniel A. Boehnen, Esq.
Nicole A. Keenan, Esq.
McDonnell Boehnan Hulbert & Berghoff LLP
300 South Wacker Drive, Suite 3100
Chicago, IL 60606
(312) 913-0001

**Counsel for Defendant:**

Robert J. Schoenberg, Esq.
Riker Danzig Scherer Hyland & Peretti LLP
1 Speedwell Avenue
Morristown, NJ 07962
(973) 451-8511

Michael B. Hurd, Esq.
Hovey Williams LLP
10801 Mastin Blvd.
Suite 1000
Overland Park, Kansas 66210
(913) 647-9050